FILED

2011 Jan-21  PM 08:11
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **COREY SINGLETERY, individually and on behalf of a class of similarly situated persons,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **CV No. 09-TMP-0489-S** |
| **vs.** | ) ) | |
| **EQUIFAX INFORMATION SERVICES LLC,** | ) ) ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Peter H. Burke
W. Todd Harvey
Burke, Harvey & Frankowski, LLC
One Highland Place
2151 Highland Avenue
Suite 120
Birmingham, AL 35205
Phone: (205) 930-9091
Fax:        (205) 930-9054

William T. ("Bo") Johnson, III
Micah S. Adkins
KIRBY JOHNSON, PC
2007 Third Avenue North
Birmingham, Alabama 35203
Phone: (205) 458-3553
Fax:    (205) 458-3589

ATTORNEYS FOR PLAINTIFF

TABLE OF CONTENTS

Table of Contents.................................................................................i

Table of Authorities.........................................................................iii

I.     INTRODUCTION..............................................................................1

II.    GENERAL REQUIREMENTS OF RULE 23.......................................3

III.   FACTA ALLOWS FOR CLASS RELIEF.........................................4

IV.    RULE 23(a) FACTORS.....................................................................5

       A.     Numerosity............................................................................5

       B.     Commonality.........................................................................7

       C.     Typicality..............................................................................9

       D.     Adequacy of Representation.............................................15

              1.     Mr. Singletery is an Adequate Representative...........15

              2.     Class Counsel Is Adequate.........................................18

V.     RULE 23(b)'s REQUIREMENTS: Predominance and Superiority..........20

       A.     Predominance......................................................................21

       B.     Superiority...........................................................................25

              1.     Members of the class have no interest in individually
                     controlling their claim...............................................25

              2.     Other Litigation Already Commenced by members
                     of the Class is Minimal..............................................28

              3.     It is Desirable to Control Litigation in this forum...............28

              4.     A Class Action that Focuses on the Issue of Whether

Equifax Willfully Violated FACTA Presents no
Management Difficulties…………………………………..31

VI.   The Classes Are Sufficiently Identifiable by
Objective Criteria……………………………………….…..37

VII.  CONCLUSION……………………………….………………40

Certificate of Service……………………………………………..41

## TABLE OF AUTHORITIES

CASES:

*AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676
(N.D. Ala. 2005)……………………………………………………..7

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)………………....…15

*Amchem Prods.. v. Windsor*, 521 U.S. 591, 617, 117 s.Ct. 2231,
138 L.Ed. 2d 689 (1997)……………………………………………..…29

*Anderson v. Garner*, 22 F.Supp. 2d 1379, 1382 (N.D. Ga. 1997)…………………1

*Armstrong v. Martin Marietta Corp.,*138 F.3d 1374, 1386 (11th Cir.1998)………1

*Bateman v. Amp. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)…..5, 27, 30

*Buford v. H & R Block*, Inc., 168 F.R.D. 340, 353 (S.D. Ga. 1996, Moore, J.)…..16

*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 500 (D.Pa. 2009)…..17, 31

*Cooper v. Pacific Life Ins. Co.*, 229 F.R.D. 245 (S.D. Ga. 2005)……………15, 16

*Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553, 1557
(11th Cir. 1986)………………………………………………………...5, 7

*Crane v. Trans Union LLC*, 282 F.Supp.2d 311, 321 (E.D. Pa. 2003)………….…32

*Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d Cir. 1997)…………….....31

*Evans v. U.S. Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983)………………7
*Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364 (1982)…………3

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160,
    102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982)………………………………2

*Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157,
    102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982)…………………………...…9

*Giles v. Ireland*, 742 F.2d 1366, 1372 (11th Cir. 1984)……………………………1

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949,
    2008 U.S. Dist. LEXIS 79827, 2008 WL 3889950,
    at *5 (N.D. Ill. Aug. 20, 2008)…………………………..…………………38

*Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985)…………………………15

*Gunnells,* 348 F.3d at 429……………………………………………………....23

*Harris v. Circuit City Stores, Inc.*, 2008 WL 400862, at *8 (N.D. Ill. 2008)…..25

*Hines v. Widnall,* 334 F.3d 1253, 1255 (11th Cir. 2003) …………………….....1

*Huff v. N.D. Cass Co. of Ala*., 485 F.2d 710, 714 (5th Cir. 1973)…………………2

*In re Farmers Ins. Co.,* 2010 U.S. Dist. LEXIS 99476…………………...………24

*In Re Theragenics Corp. Securities Litigation*, 205 F.R.D. 687, 694, 693
    (N.D. Ga. 2002)………………………………………………..…….1, 2

*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)………………………….......8

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 at 728 (11th Cir. 1987)...…16, 19

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2003)...............22, 24, 26, 28

*Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir. 1982)………………………………..18

*Mathews v. United Retail, Inc.*, 2008 WL 618960, *5
(N.D. Ill. March 5, 2008)(quoting *GMAC Mortgage*,
434 F.3d at 953)……………………………………………..25. 26

*McCall*, 236 F.R.D. at 253…………………………………………..…..18

*Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)…………..……………8

*National Air Traffic Controllers Ass'n v. Dental Plans, Inc.*,
2006 WL 1663286 (N.D. Ga. 2006) (citing *Valley Drug Co.
v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189
(11th Cir. 2003))……………………………………………………15

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154, 191 (3d Cir. 2001)…………………………………..29

*Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F3d 1042,
1047 (7th Cir. 2007)…………………………………………..…23

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 813 (1985)………………….....26

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 at 1278
(11th Cir. 2000)……………………………………………………10

*Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001)…………….9, 10

*Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000)…...21

*Schnorbach v. Fuqua*, 70 F.R.D. 424, 428 (S.D. Ga. 1975, Alaimo, J.)………...16

*Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402 (E.D.Pa. 2010 )…..…..29

*Sheffer v. Experian Info. Solutions, Inc.*, 2003 U.S. Dist. LEXIS 12728,
2003 WL 21710573, *3 (E.D. Pa. July 24, 2003)…………………………32

*Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 2010 U.S. Dist.
LEXIS 116718 (N.D. Ill. Nov. 2, 2010)……………………….24, 37, 38, 39

*Stillmock v. Weis Mkts., Inc.*, 2010 U.S. App. LEXIS 13508…………….…….8, 23

*Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 141 (D.N.J. 2009).18, 32

*Surowitz v. Hilton Hotels, Corp.*, 383 U.S. 363, 86 S. Ct. 845,
     15 L. Ed. 2d 807 (1966)……………………………………………....18

*Tchoboian v. Parking Concepts, Inc.,* 2009 U.S. Dist. LEXIS 62122,
     2009 WL 2169883 at *9 (C.D. Cal. July 16, 2009)……………………...…27

*Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 327-28 (S.D. Fla. 1996)………..…16

*Weiss v. Regal Collections,* 385 F.3d 337, 345 (3d Cir. 2004)…………………….29

OTHER AUTHORITIES:

Fed. R. Civ. P. 23(a) (2010)……………………………………………………3

Fed. R. Civ. P. 23(b)(3). ………………………………………………………....4

Fed.R.Civ.P. 23(a)(2) …………………………………………………………7

Fed. R. Civ. P. 23(b)(3)(2010). ……………………………………………...…21

15 U.S.C. §1681j(b) ……………………………………………………………5

15 U.S.C. §1681j(a)(2) …………………………………………………………4

15 U.S.C. §1681g(c)(1)(B)………………………………………………………....4

Comes now the Plaintiff, Corey Singletery, by and through undersigned counsel, and hereby files this Memorandum in support of his Motion for Class Certification.

## I.    INTRODUCTION

"The decision to grant or deny class certification lies within the sound discretion of the district court." *Giles v. Ireland*, 742 F.2d 1366, 1372 (11th Cir. 1984))**.** See *Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1386 (11th Cir.1998) (en banc) ("Questions concerning class certification are left to the sound discretion of the district court.")  "A district court's decision whether or not to certify a class under Rule 23 of the FRCP is reviewed for abuse of discretion. As long as the district court's reasoning stays within the parameters of Rule 23's requirements for the certification of a class, the district court decision will not be disturbed." *Hines v. Widnall,* 334 F.3d 1253, 1255 (11th Cir. 2003) (citations omitted).

"The Court must accept the allegations in the Amended Complaint as being true in considering class certification." *In Re Theragenics Corp. Securities Litigation*, 205 F.R.D. 687, 694 (N.D. Ga. 2002).  "The focus thus is on the nature of Plaintiffs' claims, minimizing the need to scrutinize evidence that will be adduced to support the claims." *Anderson v. Garner*, 22 F.Supp. 2d 1379, 1382

1

(N.D. Ga. 1997). "In a doubtful case, it is better to allow the case to proceed as a class action." *In Re Theragenics Corp.*, 205 F.R.D. at 693.

"Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982); *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 714 (5th Cir. 1973) (en banc) ("It is inescapable that in some cases there will be overlap between the demands of [Rule] 23(a) and (b) and the question of whether plaintiff can succeed on the merits.").

Of course, it is evident that Plaintiff has stated a claim for which relief can be granted. Equifax has admitted in its Interrogatory responses that its agents should have sent Plaintiff his free annual credit disclosure. (See Exhibit Q Equifax's Response to Interrogatory No. 10, Plaintiff's First Interrogatories to Equifax). Equifax's corporate representative, Corliss Arnold, admitted in her deposition that Equifax failed to properly fulfill Singletery's request for a free annual disclosure. (See Evidentiary Submission at Exhibit K, *Arnold* Depo., at pp. 241; 244); see generally, Motion for Class Certification ("Class Motion", at ¶¶ 55-59)). Likewise, Equifax did not provide Plaintiff with his free file disclosure due

to an adverse action.   Indeed, only after Plaintiff filed the instant lawsuit, did

Equifax provide Plaintiff with his consumer disclosure.  (Class Motion, at ¶ 54).

## II.   GENERAL REQUIREMENTS OF RULE 23

Rule 23(a) of the Federal Rules of Civil Procedure states:

> (a) Prerequisites to a Class Action.  One or more
> members of a class may sue or be sued as representative
> parties on behalf of all only if:  (1) the class is so
> numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the representative
> parties are typical of the claims or defenses of the class,
> and (4) the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(2010).

The Supreme Court has said that the final three requirements of Rule 23(a)

"tend to merge," with commonality and typicality "serv[ing] as guideposts for

determining whether . . . maintenance of a class action is economical and whether

the named plaintiff's claim and the class claims are so interrelated that the interests

of the class members will be fairly and adequately protected in their absence." *Gen.*

*Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364 (1982).

Rule 23(b)(3) of the Federal Rules of Civil Procedure provides:

A class action may be maintained if Rule 23(a) is satisfied and if:

(3) the court finds that the questions of law or fact common to class
members predominate over any questions affecting only individual
members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Subdivision (b)(3), at issue in this matter, is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## III.   FACTA ALLOWS FOR CLASS RELIEF

Singletery brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").  In 2003, Congress passed the Fair and Accurate Credit Transaction Act ("FACTA") to assist in the prevention of identity theft and credit card fraud.  The FCRA, as amended by FACTA, requires nationwide Consumer Reporting Agencies ("CRAs") to provide consumers with free annual disclosures. 15 U.S.C. §1681g(c)(1)(B).  The consumer disclosure must be provided to the consumer no later than fifteen (15) days after the date on which the request is received. 15 U.S.C. 1681j(a)(2).  Class Motion at ¶ 53.

4

In addition to the consumer's right to request a free annual file disclosure, a consumer may also request from a CRA a free consumer disclosure after an adverse action.  15 U.S.C. §1681j(b). (Class Motion, at ¶ 57).  As explained in his Motion for Class Certification, Singletery seeks to represent a class of consumers under both of these provisions of FACTA.

In *Bateman v. Amp. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), the court addressed the issue of whether a lawsuit could be certified as a class action for violation of FACTA.  It explained:

> Unfortunately, neither FACTA nor the Clarification Act addresses the availability of class actions. Where a statute is silent on the availability of class relief, the Supreme Court has instructed that we presume it to be available in all "civil actions brought in federal court." *Califano*, 442 U.S. at 700. Accordingly, as neither FACTA nor the Clarification Act contain a "direct expression" to the contrary, we must presume that Congress intended class relief to be available.

Id. at 717.

There is nothing peculiar about FACTA, therefore, which would preclude this Court from certifying this as a class action.

## IV.    RULE 23(a) FACTORS

### A.    Numerosity

While Rule 23 does not suggest a minimum number to satisfy the numerosity requirement, generally over forty class members is sufficient.  See *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)("generally

5

less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors"). Here, the putative classes could include tens of thousands, if not hundreds of thousands, of class members.

The Federal Trade Commission ("FTC") has received at least eight-hundred-and-fifty-two complaints about Equifax's failure to provide consumers with a free annual disclosure or a free consumer disclosure due to adverse action. (See Doc. 47, at ¶¶ 45-58); see also, Exhibit A to Evidentiary Submission, FTC complaints).

In addition, to the FTC complaints, Central Source received thousands of complaints every month during the relevant time period relating to Equifax's failure to provide consumer with free annual disclosures. (Class Motion, at ¶¶ 4; 38; 66-67).

Of course, as the FTC complaints and Central Source complaints are self-reported, they include a small fraction of the overall class. Indeed, the vast difference in number of free annual disclosure requests that Central Source has sent to Equifax on a monthly basis, contrasted with the number of credit disclosures that Equifax has actually fulfilled, provides further evidence that on a monthly basis thousands of consumers did not receive their free annual disclosure. (Class Motion, at ¶¶ 10-12).

Plaintiff must show that not only is the class of sufficient size but also that joinder of the members of the class is impracticable. Plaintiff is not required,

however, to prove that joinder is impossible; rather, the plaintiff only needs to show that it would be extremely difficult or inconvenient to join all members of the class. *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676 (N.D. Ala. 2005). In making this determination, the court is allowed to "make common sense assumptions in order to find support for numerosity." *Evans v. U.S. Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983).

Here, joinder of the members of the class is impracticable. FACTA is law in all fifty states and U.S. Territories. Thus, it is not unrealistic to expect to find that class members reside in all fifty states and U.S. Territories, including Puerto Rico, Guam and the U.S. Virgin Islands. Obviously, joinder of class members from such a geographic dispersion would be extremely difficult if not impossible. Thus, Plaintiff has satisfied the numerosity requirement.

B.   Commonality

The case at bar has common question of fact or law common to the classes. The commonality requirement demands only that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This Rule "does not require that all the questions of law and fact raised by the dispute be common," *Cox v. American Cast Iron Pipe Co.*, supra, 784 F.2d at 1557, or that the common questions of law or fact "predominate" over individual issues. Common nuclei of fact are typically manifest or present where the defendant has engaged in standardized conduct

7

towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001).

In *Stillmock v. Weis Mkts., Inc.*, 2010 U.S. App. LEXIS 13508, the court discussed the commonality requirement in the context of a claim brought under the FCRA.

> There is no doubt that the claims of all the putative class members present common questions of fact and law regarding Weis' liability. **At the heart of each class members' claims are the undisputed fact that Weis failed to comply with Section 1681c(g) and the highly disputed question of whether Weis' failure to comply was willful**. While there may be some issues not common to all putative class members, for example whether a particular claimant was a "consumer" under the statute, **there is no doubt that there are questions of law and fact pertinent to liability that are common to . . . all members of the proposed class**.

2010 U.S. App. LEXIS 13508 at * 9. (bold and underline added)

Like *Stillmock*, the same holds true in this action. Two overriding questions of law and fact that are common to the class are: (1) whether Equifax violated the FCRA; and (2) whether its violation was willful or negligent. Indeed, whether Equifax willfully violated that statute is the overriding, predominant question presented in this lawsuit. Other common questions are set forth in Plaintiff's Amended Complaint. (Doc. 47 at ¶ 65, pp. 43-46). Also, the question whether

8

Equifax's form letters contained standardized misrepresentations, such as requiring more information than necessary to identify and fulfill the consumer disclosure request and whether Equifax can fulfill a consumer disclosure without re-directing the consumer to the Annual Credit Report Service. Thus, it is evident, therefore, that the commonality requirement is easily satisfied.

C.    Typicality

The plaintiff's claims are typical of the class members. "Typicality, along with the related requirement of commonality, focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

Various courts have held that "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Piazza*, 273 F.3d at 1351 (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000).

As the Supreme Court explained in *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982).

> The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so

> interrelated that the interests of the class members will be
> fairly and adequately protected in their absence.

457 U.S. at 157, n.13.

"Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 at 1278 (11th Cir. 2000). "Traditionally, commonality refers to the group characteristics of the class as a whole [while] typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341 (11th Cir. 2001).

Here, there is a sufficient nexus between Mr. Singletery's claims and the class members' claims to satisfy the typicality requirement. Equifax uses standardized uniform policies and procedures when fulfilling the two types of consumer disclosures at issue in this lawsuit. (Class Motion, at ¶¶ 44-47; 60-62). Equifax's agents used these policies and procedures when processing Singletery's requests for his free disclosures. (Id., at ¶¶ 60-62; 73). The same policies and procedures that Equifax followed regarding Singletery's requests are the same policies and procedures it follows when processing all consumer requests. Hence, there is nothing unique or atypical regarding Singletery's claims when compared to the claims of the putative Class. (Id. at ¶¶ 55; 57).

Similarly, the manner in which Singletery requested his consumer disclosure is typical of the manner in which all consumers requested their own consumer disclosures.   According to testimony from both Central Source and from Equifax, consumers may request their consumer disclosures by phone, U.S. Mail or the Internet. (Class Motion, at ¶¶ 34-35; 44).   Singletery employed both the U.S. mail and phone when requesting his consumer disclosures.

Comparing the factual allegations relating to Singletery's claims with the factual allegations of other class members' claims show that the claims are typical. For example, Plaintiff alleged the following facts relating to his experience with Equifax.

> On or about June 25, 2008, EIS caused to be mailed a fourth letter to Plaintiff requesting the above described personal identifying information.  Doc. 47 at ¶ 33.

> On or about July 1, 2008, Plaintiff caused to be mailed another letter sent via certified mail to EIS containing the requested personal identifying information. Doc. 47 at ¶ 34.

> The July 1, 2008 letter from Plaintiff to EIS contained a copy of his Social Security card and his state-issued identification card.  Both documents were identical to the documents previously mailed to and received by EIS from Plaintiff.  Doc. 47 at ¶ 35.

> In addition to the personal identifying information, Plaintiff's July 1, 2008 letter included the following statement:

>> I have sent you request twice, and this is my last time trying to get a copy of my credit report.  If I do not receive a copy very soon, I will do what[']s necessary legally to obtain my credit report. Doc. 47 at ¶ 36.

11

Upon information and belief, EIS received Plaintiff's July 1, 2008 letter and a copy of his personal identifying documents on July 5, 2008 at 9:20 A.M. Doc. 47 at ¶ 37.

According to EIS's records, EIS received said letter and copied documents from Plaintiff on July 5, 2008. Doc. 47 at ¶ 38.

On or about July 8, 2008, EIS caused to be mailed a fifth letter to Plaintiff stating in relevant part:

> We received your request for a copy of your annual free credit report from Equifax. However, for proper attention, you must send your request to Annual Credit Report Request Service. Doc. 47 at ¶ 39.

On or about July 17, 2008, EIS caused to be mailed a sixth letter to Plaintiff stating in relevant part:

> We have received you request concerning your annual free credit report from Equifax and are looking forward to assisting you. However, the information you provided as proof of your identity does not match your information currently on file. Therefore, to protect your credit information, we must ask for some additional information in order to verify your identification and address.
>
> …The item you choose in the identity category must contain your Social Security number, and the item you choose in the address category must contain your current mailing address of: [REDACTED FOR SECURITY REASONS] Doc. 47 at ¶ 40.

Taking the factual allegations from the FTC complaints as true, Singletery's experience was typical of other members of the putative classes. For example, one member of Class B complained:

I originally contacted equifax on line for a copy of my credit report due to a credit card refusal with them as the reporting agency. It stated it was unable to give me a report online. I THEN called 1877FactAct & requested my report. On October 18, 2008 **I received a letter from them stating that the info I provided did not match their file & to send in documents to prove my identity. I sent them a copy of my social security card & a copy of my washington[1] drivers license as proof of my identity. I mailed this to them on October 20 2008 with a copy of the original letter requesting the info. Now, on October 30, 2008 I received a letter from them thanking me for my request for a credit report but that I must contact 1877factact to request my copy**. Doc. 47 at ¶ 48. (bold added).

Likewise, a member of Class A complained:

I have been unable to get a copy of my free annual credit disclosure from Equifax…I get a letter saying that I needed to request my report through FACTACT. This is the second time in a row this has happened. I have been unable to contact the company by phone. Doc. 47 at ¶ 49.

Similarly, another member of Class A wrote the FTC and stated:

I requested a credit report through the phone 877-322-8228. I received a form letter requesting documentation to verify identity. On 9-09-08 I mailed the documentation through the US Postal Service with a signature confirmation requested. The USPS records delivery on 9-13-08 at 2:28 AM. **Next I receive another form letter dated 9-20-08 requesting the same documentation I mailed on 9-09-08. What more can I do?** Doc. 47 at ¶ 50. (bold added)

---

[1] This putative class member would reside either in Washington state or the District of Columbia. In either event, the actual residence demonstrates that joinder to this action in Alabama would be impracticable. The same holds true for the other putative class members from Oregon and Texas mentioned below.

One Class member from Oregon wrote the FTC and stated:

> I've received from Equifax yet another demand to prove my identity. **I have now provided the required information THREE TIMES** (in the form of clear copies of my social security card as well as a utility bills showing my current address, which matches the address on my credit report and the address noted on my original letters to Equifax). . . **Since I continue to get the same canned demand letters regarding proof of my identity**, I am filing a formal complaint immediately with the Federal Trade Commission, the Attorney General of Oregon, and my congressman.  Doc. 47 at ¶ 51. (bold added)

Likewise, another member of the Class wrote the FTC and stated:

> Equifax refuses to provide me with the free annual credit report specified by the FCRA and the FACT Act, despite my repeated requests…I complied with the Equifax instructions.  Equifax responded with a letter dated July 17, 2008, saying that they had already provided a free copy of my credit report within the last 12 months…**Equifax has now denied my request three times, each time for a different reason**.  Doc. 47 at ¶ 52. (bold added)

Finally, another member of the Class wrote the FTC and stated:

> On or about 16 JAN 2007, I requested via phone a free credit report (as provided by law) from Equifax.  On 02 FEB 2007, **I received a letter from Equifax dated 25 JAN 2007 acknowledging my annual free credit report and requesting additional ID documentation. On 05 FEB 2007, I provided Equifax with a copy of my Texas Driver's License and W2 Form…I have made several attempts, but to no avail.**  Equifax was and is still not responsive. Doc. 47 at ¶ 56. (bold added),

The foregoing consumer complaints demonstrate the claims of the members of Class A and Class B are typical of the plaintiff's claims. Thus, the plaintiff has satisfied the typicality requirement.

D.   Adequacy of Representation

The plaintiff and his counsel satisfy the adequacy requirement. The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Therefore, a determination of the adequacy of representation includes two inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *National Air Traffic Controllers Ass'n v. Dental Plans, Inc.*, 2006 WL 1663286 (N.D. Ga. 2006) (citing *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

"The adequate representation requirement involves questions of whether Plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation, and whether Plaintiff has any interests antagonistic to the rest of the class." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).

1.   Mr. Singletery is an Adequate Representative

In determining whether a class representative is adequate, the court should keep in mind the admonition of the court in *Cooper v. Pacific Life Ins. Co.*, 229

15

F.R.D. 245 (S.D. Ga. 2005), which eloquently explained:

> Class representatives "should have a working knowledge of the case." *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 353 (S.D. Ga. 1996, Moore, J.). **However, requiring too much of class representatives "could well prevent the vindication of the legal rights of the absent class members under the guise of protecting those rights**." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 at 728 (11th Cir. 1987). The "basic issue of adequate representation [is] whether there are significant antagonistic interests between the representatives and the class." *Schnorbach v. Fuqua*, 70 F.R.D. 424, 428 (S.D. Ga. 1975, Alaimo, J.). **A lack of detailed factual knowledge about the case or a lack of understanding regarding the legal theories by the named plaintiffs does not preclude class certification in a complex case**. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 327-28 (S.D. Fla. 1996); *Kirkpatrick* at 727-28.

Cooper at 258 (bold added).

Here, Mr. Singletery has demonstrated, through his responses to discovery that he has a working knowledge of the case. (Evidentiary Submission, Ex. M, Singletery, Depo., at pp. 173-174, discussing Mr. Singletery's Supplemental Responses to Equifax's Interrogatories). Mr. Singletery has provided two days of deposition testimony. Plaintiff understands the meaning of a free disclosure[2] and that he is entitled to it by law (Id. at p. 53). Mr. Singletery testified that it was important for him to receive the Equifax report so that he could examine it because he was a young adult attempting to establish credit. (Id. At p. 137).

---

[2] Singletery, like the other members of the class without legal training, would naturally equate the term credit report with consumer disclosure.

Moreover, Mr. Singletery understands that this lawsuit has been brought as a class action. (Exhibit M at p. 240); Mr. Singletery testified that "a lot of people had complaints, just like I had my complaint . . . they asked Equifax for their credit report and Equifax sent them [a letter] saying that I need this information . . .they got the letter back saying that they still need more information." (Id. at p. 242) Finally, Mr. Singletery agreed that he is seeking statutory damages of between $100 and $1,000 per violation for class members (Id. at p. 253) and that a jury will have to decide that issue. (Id. at p. 259).

It is evident that Singletery is an adequate class representative.  Other courts certifying class actions where Equifax was the defendant have reached similar results.   For example, in *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (D.Pa. 2009), Equifax vigorously argued that the class representative's lack of knowledge regarding the lawsuit made him an inadequate class representative. In rejecting this argument, the court explained:

> Equifax claims that plaintiff's lack of knowledge about the case, and apparent lack of interest, make him unable to fairly and adequately protect the interests of the class as class representative. (Def. Opp. 13.) Equifax cites the deposition of Mr. Chakejian in which the plaintiff admitted that he had never read the Amended Complaint, and could not identify the law or the part of the FCRA that he claims Equifax violated. (*See* Chakejian Dep. 153:15-20; 167:1-7; 168:5-9.) In addition, Chakejian testified that he did not wholly understand his obligations as class representative (Chakejian Dep. 76:1-3.) **While Chakejian's understanding of the instant litigation may be limited, the Supreme Court has held that a class representative's lack of knowledge about his case does not make**

17

**him an inadequate representative.** *Surowitz v. Hilton Hotels, Corp.*, 383 U.S. 363, 86 S. Ct. 845, 15 L. Ed. 2d 807 (1966). *See also Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir. 1982) (finding adequacy requirement met even where the named plaintiff "displayed a complete ignorance of facts concerning the transaction that he was challenging"); *McCall*, 236 F.R.D. at 253 ("The adequacy of putative class representatives does not depend on their legal knowledge, nor are they required to know all the facts about the class as a whole."). **Mr. Chakejian submitted to a nearly five hour deposition in this case, and testified that he understood that he had a responsibility to look out for the best interests of the class members.** (Chakejian Dep. 166:15-21.) Given the cases in this Circuit finding adequacy despite the named plaintiff having a "decidedly minimal knowledge of the case," **Mr. Chakejian appears sufficiently interested and engaged in the case to serve as an adequate representative. *Allen v. Holiday Universal*, 249 F.R.D. 166, 185 (E.D. Pa. 2008) (concluding that the named plaintiff, who appeared otherwise uninformed about the details of his case, was an adequate representative when he reviewed and verified the original complaint, was aware of the theory of the lawsuit, and participated at his deposition). Mr. Chakejian's "confusion about some aspects of the case does not create a conflict to render him inadequate under Rule 23(a)(4)."** *McCall*, 236 F.R.D. at 253.

256 F.R.D. at 499. (bold added)   See *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 141 (D.N.J. 2009) ("After careful consideration of the record, the Court finds that the named Plaintiff possesses the requisite knowledge about the case such that he can make informed decisions regarding the litigation. He was able to articulate the basis for the lawsuit, and he has shown commitment to the case.")

 2.   Class Counsel Is Adequate.

The plaintiff's counsel satisfies the adequacy requirement.   Adequacy of

representation also requires a showing that the action will be vigorously prosecuted.   The Eleventh Circuit has adopted the following standard in interpreting the federal Rule 23(a)(4):

> We conclude ... that ... **where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs** unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case.   To require less would permit attorneys essentially to serve as class representatives; **to require more could well prevent the vindication of the legal rights of the absent class members under the guise of protecting those rights**.

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987) (bold and underline added).

Unquestionably, class counsel of both firms is adequate to represent the interests of the classes.   Plaintiff's counsel has vigorously pursued discovery in this action for over two years.   Plaintiff's counsel has propounded three sets of paper discovery to Equifax.   In response, Equifax has produced over two thousand pages of internal documents.   Plaintiff's counsel has deposed two of Equifax's corporate representatives and three non-parties, including the CDIA, DDC Atlanta and Central Source.   Plaintiff's counsel has also served numerous subpoenas on non-parties, including but not limited to Central Source, DirecTV and the FTC.

The law firm of Kirby Johnson, P.C. enjoys an excellent reputation in the legal community.   Further, the attorneys of Kirby Johnson, PC are experienced in complex litigation and class matter, including FCRA class actions. (See Evidentiary Submission at Exhibit N, *Declaration* of William Johnson, III).

Likewise, the firm of Burke Harvey & Frankowski, LLC also enjoys an excellent reputation in the legal community and has the expertise and resources required to vigorously pursue this matter.  Attorney Peter Burke has been AV rated for ten years and has spent considerable time in his legal career working on class litigation. See Evidentiary Submission at Exhibit O, *Declaration* of Peter H. Burke).

## V.      RULE 23(b)'s REQUIREMENTS: Predominance and Superiority

Plaintiff seeks certification of this class action under Rule 23(b)(3):

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:  (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

> the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(2010).

### A.   Predominance

To satisfy the predominance requirement, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000)(quotations and citation omitted).  "The predominance inquiry focuses on the legal or factual questions that qualify each class member's case as a genuine controversy, and is far more demanding than Rule 23(a)'s commonality requirement." Id.

To determine whether common questions predominate, the Court must examine the cause of action asserted in the complaint on behalf of the putative class and consider what value the resolution of the class-wide issue will have in each class member's underlying cause of action. *Rutstein v. Avis*, supra, 211 F.3d, at 1234.   In practical terms, the Eleventh Circuit described the test for predominance:

> Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3) . . . . **[I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.** Put simply, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important. **If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate**.

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2003)(bold added).

Here, common issues predominate over individualized issues.  The central overriding issue is whether Equifax violated the FCRA, and if yes, then did it do so willfully.  The quantum of proof needed for a jury to decide this issue will necessarily focus on Equifax's conduct, including among other things: Equifax's form letters; the manner in which it staffs its workforce; its policies and procedures for processing and fulfilling consumer disclosures; its quality control measures; and its response to consumer complaints.  None of these issues will be affected by the addition or subtraction of additional Plaintiffs.  Indeed, the only issue common to each Plaintiff would be whether he or she was entitled to a free disclosure; requested the free annual disclosure, or a free disclosure after receiving an adverse

action notice; and whether Equifax provided the consumer with the disclosure in a

timely manner.

In *Stillmock v. Weis Mkts., Inc.*, 2010 U.S. App. LEXIS 13508 the court

examined the predominance inquiry in the context of the willfulness provision of

the FCRA.   It explained:

> Critically, Rule 23(b)(3)'s commonality-predominance test is
> qualitative rather than quantitative. *Gunnells,* 348 F.3d at 429. Thus,
> while courts have properly denied class certification where individual
> damages issues are especially complex or burdensome, *see, e.g.,*
> *Pastor v. State Farm Mut. Auto. Ins. Co.,* 487 F.3d 1042, 1047 (7th
> Cir. 2007), **where, as here, the qualitatively overarching issue by**
> **far is the liability issue of the defendant's willfulness**, and the
> purported class members were exposed to the same risk of harm every
> time the defendant violated the statute in the identical manner, **the**
> **individual statutory damages issues are insufficient to defeat class**
> **certification under Rule 23(b)(3). . . . Where . . . common**
> **questions predominate regarding liability, then courts generally**
> **find the predominance requirement to be satisfied even if**
> **individual damages issues remain.**   Here, the putative class
> members were exposed to the identical risk of identity theft in the
> identical manner by the repeated identical conduct of the same
> defendant, and none suffered actual damages from identity theft.
> Under these circumstances, it strains credulity to conclude that the
> individual damages issues presented by the purported class which
> Plaintiffs seek to certify would be anything other than simple and
> straightforward. **Pragmatically, the only substantive difference**
> **between putative class members for purposes of affixing the**
> **statutory damages figure within the statutory damages range of $**
> **100 to $ 1,000 or in awarding punitive damages is the number of**
> **receipts received by a single class member during the**
> **approximately eighteen months at issue.**

And indeed, this difference does not complicate matters very much at
all given that the class can be broken down into subcategories based
upon the number of violating receipts received per putative class

member. In sum, we hold that common questions of law and fact predominate over the individual issues presented by Plaintiffs' purported class action, thus satisfying Rule 23(b)(3)'s commonality-predominance test. *See Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir. 2004) ("Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.")(internal quotation marks and alteration marks omitted).

2010 U.S. App. LEXIS 13508 at * 14-17 (bold and underline added).

A similar result was reached by the court in *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 2010 U.S. Dist. LEXIS 116718.   There, the court dismissed the defendant's argument that the class should be decertified for failure to satisfy the predominance inquiry.

> Finally, Defendant argues that the class should be decertified because it fails on the predominance prong—that is, the requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). **This court earlier found the predominance requirement satisfied because "the question of whether Defendant acted willfully is central both to Plaintiff's individual claim and to the claims of the class as a whole."** *Shurland*, 259 F.R.D. at 159.
> Again, nothing has changed since the court made this determination except for the difficulties in identifying specific, individual members of the class. **It is simply not true that, as Defendant now suggests, there is "only one proposed class member." (Def.'s Mot. to Decert. at 14.) The class remains one having more than 6,300 potential members despite difficulties in identifying them**.

2010 U.S. Dist. LEXIS 116718 at * 23-24 (bold added).

In the instant case, the Plaintiff's claims are identical to the putative class members' claims.  Plaintiff seeks a statutory penalty between $100 and $1,000 per

24

violation of FACTA.   Depending upon a jury's finding of willfulness, each of the members of the Class would be entitled to the same statutory penalty as Plaintiff, based upon each violation of FACTA that a class member could prove.  See *In re Farmers Ins. Co.,* 2010 U.S. Dist. LEXIS 99476 ("[P]laintiffs are not required to present individualized proof of injury or harm from each class member in order to obtain an award of statutory damages. . . The court concludes that a reasonable jury should be able to determine the proper amount of damages within the statutory range.")  Again, whether Equifax acted willfully is central to Plaintiff's individual claims and to the claims of the class as a whole.   Hence, it is evident that the predominance requirement is satisfied.

B.    Superiority

The superiority requirement is met when the plaintiff demonstrates that the class action is the superior method for adjudication of the controversy.   The superiority requirement is met when the plaintiff demonstrates that there is a standardized conduct by a defendant to the putative class members and a common nucleus of operative facts is present. *See Harris v. Circuit City Stores, Inc.,* 2008 WL 400862, at *8 (N.D. Ill. 2008).  "FACTA claims are especially well-suited to resolution in a class action where, as here, 'potential recovery is too slight to support individual claims, but injury is substantial in the aggregate. *Mathews v. United Retail, Inc.,* 2008 WL 618960, *5 (N.D. Ill. March 5, 2008)(quoting *GMAC*

25

*Mortgage*, 434 F.3d at 953). The Eleventh Circuit has set out four factors to be considered in determining whether the class action is the superior method:

> (1) the interest of members of the class in individually controlling their claim, (2) other litigation already commenced by members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action.

*Klay v. Humana, Inc.,* 382 F.3d, at 1269.

As shown below, each of the foregoing factors militates in favor of this Court certifying this lawsuit as a class action.

### 1. Members of the class have no interest in individually controlling their claim

Here, as in *Klay*, there is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation. As the United States Supreme Court explained in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 813 (1985):

> The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually, nor would he affirmatively request inclusion in the class if such a request were required by the Constitution. If, on the other hand, the plaintiff's claim is sufficiently large or important that he wishes to litigate it on his own, he will likely have retained an attorney or have thought about filing suit, and should be fully capable of exercising his right to "opt out."

The case before this Court embodies several of the problems which Rule 23

seeks to remedy.  Although there have been numerous Consumer complaints made to the FTC and Central Source relating to Equifax's conduct, it does not appear that any Consumer, other than Singletery, has ever filed a class action relating to this matter.

Moreover, the size of the potential recovery for an individual consumer, even taking into account the statutory penalty of the statute, indicates that the claim may be so small that other consumers may not pursue individual claims.  For example, in *Bateman v. Amp. Multi-Cinema, Inc.,* 623 F.3d 708 (9th Cir. 2010) the court explained:

> "The need for statutory damages to compensate victims is plain. **The actual harm that a willful violation of FACTA will inflict on a consumer will often be small or difficult to prove**. As the Seventh Circuit similarly noted in *Murray*, under the FCRA 'individual losses, if any, are likely to be small--a modest concern about privacy, a slight chance that information would leak out and lead to identity theft. **That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.**'"

623 F.3d at 718 (underline and bold added).

Even with the potential for a statutory award and fee shifting provision, however, it is evident that many attorneys will not undertake representation unless there is the potential for a class recovery.  See *Tchoboian v. Parking Concepts, Inc.,* 2009 U.S. Dist. LEXIS 62122, 2009 WL 2169883 at *9 (C.D. Cal. July 16, 2009) ("The Court is not convinced that the fact that an individual plaintiff can

27

recover attorney's fees in addition to statutory damages of up to $ 1,000 will result in enforcement of the FCRA by individual actions of a scale comparable to the potential enforcement by way of class action."). Hence, the first factor of *Klay* does not counsel against class certification.[3]

>        2.       Other Litigation Already Commenced by members of the Class is Minimal

Similarly, there are no class members separately pursuing other class cases involving the same claims and parties. *Klay v. Humana, Inc.,* 382 F.3d at 1269. In fact, Equifax only identified nine other lawsuits that had been filed by individuals alleging similar facts as Plaintiff. Of those, eight of the actions were filed pro se and all of the actions have been resolved. See Equifax's Supplemental Response to Interrogatory # 4. Hence, the second factor of *Klay* also favors certification of this action.

>        3.       It is Desirable to Control Litigation in this forum

Plaintiff contends that this litigation should be concentrated in this Court as the case has proceeded here for nearly two years. The Court has presided over discovery matters and is well familiar with the legal issues this lawsuit raises. To proceed in separate courts on individual claims would be costly in time, effort, and expense for the litigants and the court system. It would further require each litigant

---

[3] Of course, to the extent a class member does have an interest in bringing his or her own claim, the class member is free to opt out of this action after notice is provided.

to repeatedly prove the same facts and make the same legal arguments before different courts.

The court in *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402 (E.D.Pa. 2010 ) summarized why a class suit that sought to enforce the FCRA's penalty provision was superior to individual litigation.  It stated:

> To meet the superiority requirement, Plaintiffs must show that a class action, rather than individual litigation, is the best method for achieving a fair and efficient adjudication of the controversy. <u>See</u> *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 191 (3d Cir. 2001). **Here, a class action is superior to other available methods because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims, and allows access to the courts for those who likely would not gain such access standing alone - particularly in light of the relatively modest amount of statutory damages available under the FCRA**. In many cases, courts have recognized that Rule 23(b)(3) certification is particularly appropriate for consumer claims such as those asserted here. *Weiss v. Regal Collections,* 385 F.3d 337, 345 (3d Cir. 2004) ("[r]epresentative actions ... appear to be fundamental to the statutory structure of [federal debt collection law]"). <u>See also</u>, e.g., *Amchem Prods. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("**The policy of the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights**"). On balance, the Court determines that the superiority requirement is satisfied.

711 F. Supp. 2d at pp. 412-413 (bold added).

In addition, when deciding whether a class action is superior to individual litigation, the Court should take into account the underlying purposes of FACTA's

statutory damages provision.   As the court explained in *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. Cal. 2010):

> Congress expressly created a statutory damages scheme that intended to compensate individuals for actual or potential damages resulting from FACTA violations, without requiring individuals to prove actual harm. **Thus, irrespective of whether Bateman and all the potential class members can demonstrate actual harm resulting from a willful violation, they are entitled to statutory damages**. There is no language in the statute, nor any indication in the legislative history, that Congress provided for judicial discretion to depart from the $ 100 to $ 1000 range where a district judge finds that damages are disproportionate to harm. Further, we cannot surmise a principled basis for determining when damages are and are not "proportionate" to actual harm. Indeed, one might plausibly argue that a $ 1000 award, or even a $ 100 award, for a single violation of FACTA, without any allegation of harm, is not proportionate. **But the plain text of the statute makes absolutely clear that, in Congress's judgment, the $ 100 to $ 1000 range *is* proportionate and appropriately compensates the consumer**. That proportionality does not change as more plaintiffs seek relief; indeed, the size of AMC's potential liability expands at exactly the same rate as the class size.
>
> To the extent that statutory damages also serve a deterrent purpose, a court undermines that purpose in denying class certification on the basis of the proportionality of actual harm and statutory liability. **Congress, in its legislative judgment, specified the range of damages that it considered sufficient to have a deterrent effect.** Despite Congress's awareness of the availability of class actions, it set no cap on the total amount of aggregate damages, no limit on the size of a class, and no limit on the number of individual suits that could be brought against a merchant. **Allowing denial of class certification because of the sheer number of violations and amount of potential statutory damages would allow the largest violators of FACTA to escape the pressure of defending class actions and, in all likelihood, to escape liability for most violations**. In other words, whatever risk of over deterrence class certification poses, refusing to certify a class on these grounds poses the risk of significant under deterrence.

623 F.3d at 719 (bold added).

Indeed, by not allowing this action to proceed on a class wide basis, the Court would reward Equifax for failing to follow the requirements of the statute and deprive consumers of their day in court.  Such a result would turn on its head the whole purpose Congress had when it amended the law mandating that CRAs provide free disclosures to consumers.

4.   A Class Action that Focuses on the Issue of Whether Equifax Willfully Violated FACTA Presents no Management Difficulties

Not only is it evident that a class action is superior to individual litigation but also it is clear that the Court will not face any management difficulties with this action.  As noted, supra, the overriding issue in this action is whether Equifax willfully violated FACTA.  Deciding this issue will present no management difficulties because the proof required for such a finding will necessarily focus on Equifax's conduct and the company's state of mind.  As the court explained in *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009):

> To prove willful noncompliance with the FCRA, the plaintiff must demonstrate that **Equifax "knowingly and intentionally committed an act in conscious disregard for the rights of others."** *Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d Cir. 1997) (holding that to justify an award of punitive damages under 15 U.S.C. § 1681n, the defendant's actions must "be on the same order as willful concealments or misrepresentations") (citations omitted). **Thus, the inquiry is to Equifax's state of mind in implementing its policies and procedures, not on**

31

> **the customer's particular interaction with the CRA**. *Id. See
> also Crane v. Trans Union LLC*, 282 F.Supp.2d 311, 321 (E.D.
> Pa. 2003) (relying on evidence of defendant's reporting
> practices **to determine whether that policy was adopted in
> knowing or reckless violation of the FCRA**); *Sheffer v.
> Experian Info. Solutions, Inc.*, 2003 U.S. Dist. LEXIS 12728,
> 2003 WL 21710573, *3 (E.D. Pa. July 24, 2003) (looking at the
> policies of the defendant to determine whether alleged
> inaccuracies in plaintiff's credit report were the result of the
> defendant's conscious or reckless disregard). **Like *Crane* and
> *Sheffer*, the relevant inquiry in this case is what Equifax's
> state of mind**: what information Equifax disclosed or failed to
> disclose to customers with respect to its reinvestigation
> procedures, and whether it knew, or consciously disregarded the
> fact that those disclosures were misleading. **To prove
> willfulness here, a consumer-by-consumer inquiry is not
> necessary**.

256 F.R.D. at 500 (bold added). See *Summerfield v. Equifax Info. Servs. LLC,* 264

F.R.D. 133 ("Thus, the claim will focus on Defendant's policies and procedures

with respect to issuing reinvestigation letters, and whether Defendant knew, or

consciously disregarded, that the form letters were false or misleading in violation

of FCRA. As such, although willfulness is necessarily a fact-bound inquiry,

individual issues will not predominate because the Defendant's conduct was

consistent with its own policy and practice from one consumer to the next.").

   Third-party discovery supports Plaintiff's claims of a willful violation of

FACTA.   The Central Source documents demonstrate Equifax willfully violated

FACTA based on the number of consumer complaints Central Source received on

a monthly basis relating to Equifax.   When comparing consumer complaints

regarding Equifax versus the other two CRAs (Experian and Trans Union), for the months of February, March, April, May, and June 2009, Equifax accounted for 65%, 67% 69%, 67%, and 64% of the complaints the Central Source received. (See Exhibit P of Evidentiary Submission at CS 000264).

The foregoing is statistically significant because it is undisputed that Equifax received about 34% to 37% of the free annual credit disclosure request per channel each month.[4]  (Class Motion at ¶¶ 14-22).  Yet, while Equifax received roughly the same percentage of requests per month as the other two CRAs, Equifax's percentage of the number of complaints received in some months was more than twice as much as the other two CRAs combined. (Id. at ¶ 39).

Other third-party discovery obtained by the Plaintiff from DDC Atlanta, Equifax's vendor during the time at issue, demonstrates Equifax willfully violated FACTA.  DDC's documents illustrate DDC failed for several months to meet the minimum requirements necessary for fulfilling Equifax's disclosure requests. While Equifax employed DDC Atlanta as a vendor, DDC Atlanta was contractually obligated to achieve a 90% performance level when fulfilling

---

[4]  Central Source receives requests for free annual disclosures via three channels: web; telephone; and mail.  After verifying that the request is in a correct format, the Central Source then sends the request to the appropriate CRA for fulfillment.

disclosures.    Linda   Kohler,   DDC   Atlanta's   corporate   representative, acknowledged:

> Q.    So that's actually – for four months in a row: March, April, May, June of 2008, DDC Philippines did not meet minimum 90 percent threshold, correct?
>
> A.    That's true.

See deposition of *Kohler*, attached to Evidentiary Submission as Exhibit "I", at pp. 149-150.

If one compares the foregoing performance levels for those four months with the Central Source Complaint and Error Reports for those same four months, Equifax accounted for 58%, 62%, 64%, and 66% of the percentage errors for the Error Breakdown for these respective months.  See CS 000231, included in Exhibit "P" to the Evidentiary Submission.  CS 000240, which contains the months of June through October of 2008, shows that Equifax accounted for 66%, 69%, 67%, 67%, and 65% of the percentage errors for the Error Breakdown for the respective months.  The numbers for October of 2008 through February of 2009 are no better: 65%, 65%, 70%, 69%, and 65%.  Id. at CS 000252.

Plaintiff's expert, Evan Hendricks, submitted an expert report to the Court. (Plaintiff's Expert Report, attached to the Evidentiary Submission as Exhibit "G."). Hendricks reviewed Equifax's policies and procedures and other relevant information relating to Plaintiff's individual claim.   Hendricks opined that

Equifax's failure to fulfill Plaintiff Singletery's requests for free disclosures was not the result of employee error but the direct result "of systemic failures stemming from Equifax's policies and practices," and further, that the policies and procedures have "deprived a significant number of other consumers of their right to the free credit reports to which they were legally entitled." Id. at p. 1.

As outlined in Hendricks' Expert Report, there are several policies and procedures that Equifax has chosen to adopt that have the effect of depriving consumers of their free disclosures. For example, Equifax's Address Discrepancy Policy: Equifax uses "partial matching algorithms" when including information about a consumer it includes in a credit file it sells to a creditor; yet, when a consumer requests his or her credit file, Equifax does not use a partial matching algorithm but instead defaults to an exact match on addresses that has the effect of denying a consumer his or her free credit disclosure. (See Exhibit G at p. 3).

As Hendricks explains: "That is why, as an example, Equifax reached the unreasonable conclusion that `116 English Knoll, Birmingham, AL 35235' was not a sufficient match with 1667 English Knoll, Birmingham, AL 35235." (Exhibit G at p. 3). Importantly, in this regard, no "where does Equifax instruct its outsourced agents to consider whether there is only a minor discrepancy between the address provided by the consumer . . . and the address existing in the consumer's Equifax file." Id. at p. 7.

35

By contrast, Equifax's customer GE Money was able to purchase the credit report of Singletery by only submitting 1667 KN. (Class Motion at ¶ 97)  Although this only showed up as a 95% match, Equifax provided the credit report to GE Money. Class Motion at ¶ 96.

Previously, John Ford, the Chief Privacy Officer of Equifax, in a Written Statement to Congress, referred to such errors in a home address as merely "cosmetic errors" and as not being critical to any risk decision.  (See Exhibit H to Evidentiary Submission at pp. 11-12) (Class Motion at ¶ 25).  Mr. Arnold also discussed cosmetic errors as they relate to street addresses.  (Class Motion at ¶ 69). Yet, even though Equifax is well aware of these cosmetic errors, Equifax does not have a mechanism in place to allow for them when a consumer requests his free credit disclosure.

On top of Equifax's exact or strict matching policy, Equifax outsources the work to low-cost, overseas labor where the tasks are hyper-compartmentalized. Equifax's policy in this regard does not allow the agent performing the task to investigate the exact match discrepancy.  Moreover, requests that Central Source sends to Equifax are automatically handled within Equifax whereby it provides group identifiers to its outsourced workers that default to form letters such as "consumer has already received Annual Free within 12 months" or "additional

information needed." Hence, the system readily allows form letters to be sent to consumers such as Singletery. (Exhibit G at p. 8).

And once a consumer like Singletery receives the first form letter requesting additional information, he can end up in a vicious cycle whereby Equifax's agents continue to generate form letters either requesting additional information or sending the consumer to the Central Source. Id. See also, *supra*, typicality section comparing Singletery's experience with those of putative class members that made FTC complaints. Hendricks further points out that after Equifax requested additional information from Singletery, from the VERY SAME address Singletery supplied to Equifax, Singletery received and responded to those form letters, which in itself should have authenticated that address. Nonetheless, Equifax continued to deny the request for the disclosure. (Exhibit G at p. 9).

In sum, it is evident that the issue of whether Equifax willfully violated FACTA is capable of class wide proof and resolving this issue will present no management difficulties for the Court.

## VI.    The Classes Are Sufficiently Identifiable by Objective Criteria

Plaintiff expects Equifax to attack Plaintiff's two classes as being unidentifiable, much like the defendant in *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 2010 U.S. Dist. LEXIS 116718 attempted to do. As shown below,

however, this argument should be dismissed because the classes are sufficiently identifiable by objective criteria.

In rejecting the defendant's argument, the court in *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 2010 U.S. Dist. LEXIS 116718 (N.D. Ill. Nov. 2, 2010) restated the class definition in a case the defendant had cited.  It noted:

> The class at issue in that case consisted of persons or entities who (1) received, on a telephone facsimile machine, a fax transmitted on February 23 or March 29, 2005, that advertised mortgage refinancing or debt consolidation loan programs and that instructed the recipient to "Call the experts for a free analysis" at "1-877-907-SAVE" or "1-877-489-8777" or "1-410-349-4220," (2) owned and/or paid for some portion of the operation of the machine on which the fax was received, and (3) had not previously consented to receiving such advertisements addresses both of these deficiencies.

2010 U.S. Dist. LEXIS 116718 at 21.

The court then found that the foregoing class definition was satisfactory because it contained "precise, objective criteria that would be within the personal knowledge of the potential class member." 2010 U.S. Dist. LEXIS 116718 at 21. See also, *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2008 U.S. Dist. LEXIS 79827, 2008 WL 3889950, at 5 (N.D. Ill. Aug. 20, 2008).

Likewise, in this action, Plaintiff has proposed two classes that also contain "precise, objective criteria that would be within the personal knowledge of the potential class member.  Plaintiff has offered the following definitions for the two classes:

**CLASS A**:   All consumers who reside in the United States and its Territories, excluding officers and directors of Equifax, for the two years preceding March 12, 2007, continuing through the resolution of this matter, who, when entitled to do so, made a request for their Equifax free annual disclosure, and Equifax failed and/or refused to provide the consumer with the free annual disclosure within fifteen (15) days of receipt of the consumer's request.

**CLASS B**:   All consumers who reside in the United States and its Territories, excluding officers and directors of Equifax, for the time period March 12, 2007, continuing through the resolution of this matter, who, when entitled to do so, made a request for their free Equifax consumer file due to an adverse action, and Equifax failed and/or refused to provide the consumer with the free file disclosure within thirty (30) days of receipt of the consumer's request.

As noted, the two foregoing classes are sufficiently definite because they can be ascertained by objective criteria and by reference to Equifax's conduct.  Again, the foregoing "objective criteria that would be within the personal knowledge of the potential class member." 2010 U.S. Dist. LEXIS 116718 at 21.

Here, Equifax can easily locate putative class members' credit files in its database by simply entering the consumer's name and address.  (Exhibit K at 104-105).  Equifax's consumer files include the date which it fulfilled every consumer's annual free disclosure.  Id., at 207.  Thus, whether a consumer is entitled to a free disclosure under the same circumstances for which Mr. Singletery was will be easily ascertainable from Equifax's records.

Moreover, Equifax database also tracks when its customers (i.e., GE) make an inquiry into a consumer's Equifax credit report. Id., at 207-208. For example, when GE inquired into Mr. Singletery's Equifax report, GE's inquiry was recorded in Mr. Singletery's Equifax file. Thus, a review of Equifax's database can determine whether a disclosure was made to a consumer pursuant to adverse action by reviewing the consumer's file, seeing when the disclosure was made, and the date of the adverse action. Id., at 209-210.

## VII.   CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiff's Motion for Class certification, Plaintiff requests that the Court certify the two classes as set forth herein, or any classes that the Court deems proper, and also appoint the law firms of Kirby Johnson P.C. and Burke Harvey & Frankowski, LLC as class counsel.


Respectfully Submitted,                    Respectfully Submitted,



/s/ Peter H. Burke                         /s/ Micah S. Adkins
Peter H. Burke                             Micah S. Adkins
(ASB-1992-K74P)                            (ASB-8639-I48A)

<u>OF COUNSEL:</u>

| | |
|---|---|
| W. Todd Harvey, Esq. | Jeffrey C. Kirby |
| Burke, Harvey & Frankowski, LLC | William T. ("Bo") Johnson, III |
| One Highland Place | KIRBY JOHNSON, PC |
| 2151 Highland Avenue | 2007 Third Avenue North |
| Suite 120 | 2007 Third Avenue North |
| Birmingham, AL 35205 | Phone: (205) 458-3553 |
| Phone: (205) 930-9091 | Fax: (205) 458-3589 |
| Fax: (205) 930-9054 | |
| pburke@bhflegal.com | madkins@kirbyjohnsonlaw.com |
| tharvey@bhflegal.com | jkirby@kirbyjohnsonlaw.com |
| | bjohnson@kirbyjohnsonlaw.com |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day, of January, 2011, I have served a copy of the foregoing by electronic mail, to the following counsel and/or parties of record:

Barry Goheen, Esq.
Lewis Perling, Esq.
K. Ann Broussard, Esq.
King & Spalding, LLP
1180 Peachtree Street
Atlanta, GA 30309

Victoria J. Franklin-Sisson
Jones, Walker, Waechter, Poitevent Carrere & Denegre
500 Financial Center
505 20th Street North, Suite 600
Birmingham, AL 35203

/s/ Peter H. Burke
OF COUNSEL

41